**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| **WAL-MART STORES, INC., A Delaware corporation and WAL-MART REAL ESTATE BUSINESS TRUST, a Delaware statutory trust,**<br><br>        **Plaintiffs,**<br><br>  **v.**<br><br>**CITY OF TURLOCK; TURLOCK CITY COUNCIL; and DOES 1 THROUGH 10, inclusive,**<br><br>        **Defendants.**<br>_____ | **1:04-cv-5278 OWW DLB**<br><br>**MEMORANDUM DECISION AND ORDER DENYING IN PART AND GRANTING IN PART SAVE MART SUPERMARKETS' REQUEST FOR RECONSIDERATION OF MAGISTRATE JUDGE'S RULING PURSUANT TO LOCAL RULE 72-303.** |


## I.   INTRODUCTION

Save Mart Supermarkets ("Save Mart"), a non-party, moves for reconsideration of the magistrate judge's order granting Plaintiffs Wal-Mart Stores, Inc., and Wal-Mart Real Estate Business Trust's ("Wal-Mart") Motion to Compel Compliance with Subpoena Duces Tecum.  (Doc. 30, Mag. Order).  Wal-Mart opposes. (Doc. 33, Pl.'s Opp.).  Oral argument was heard on April 18, 2005, with counsel for all parties appearing. Save Mart's motion was granted in part and denied in part.  The subpoena was modified.  A protective order is to be executed by

1

agreement of the parties.  (*See* Doc. 63, Proposed Second Amended

Protective Order ("Proposed Protective Order")).


## II.   PROCEDURAL AND FACTUAL BACKGROUND


Wal-Mart filed this action against Defendants City of

Turlock ("City") and Turlock City Council ("City Council") on

February 11, 2004.  (Doc. 1, Compl., filed Feb. 11, 2004).  Wal-

Mart did not name as defendants individual Turlock City Council

members.  Wal-Mart brings six claims against the City and the

City Council (collectively, "Defendants"):  (1) Equal Protection

under the United States Constitution; (2) Equal Protection under

the California Constitution; (3) Commerce Clause;

(4) Unconstitutionally Vague and Uncertain; (5) Deprivation of

Civil Rights under 42 U.S.C. § 1983; (6) Declaratory Relief.[1]

Also on February, 11, 2004, Wal-Mart filed a Petition for

Writ of Mandate in the Superior Court for Stanislaus County,

pursuant to the California Environmental Quality Act.  (*See* Doc.

40, Pl.'s Opp. 9).  On April 30, 2004, during the course of the

state court proceedings, the City lodged an administrative record

relating to the petition to the Stanislaus County Superior Court.

(*Id.*).

Wal-Mart's claims in this action arise out of an ordinance

_____

[1] As part of its claim for Declaratory Relief, Wal-Mart
seeks a declaration that the Ordinance at issue is null and void
on the grounds that it (a) violates the equal protection clauses
of the United States and California constitutions; (b) violates
the Commerce Clause of the United States Constitution; and (c) is
unconstitutionally vague and uncertain.  (Doc. 1, Compl. ¶ 59).

passed by the City Council on January 13, 2004 ("Ordinance"), which prohibits stores with over 100,000 square feet of sales floor area, of which more than five percent (5%) of the sales floor area is devoted to the sale of nontaxable goods such as groceries, from opening in the City of Turlock. (Doc. 32, Save Mart's Mem. 2-3). While Wal-Mart currently operates a store in the City of Turlock, the Ordinance effectively prevents Wal-Mart from opening a larger "Superstore" in the City of Turlock.

On July 30, 2004, Wal-Mart served Save Mart, a third party, with a Deposition Subpeona Duces Tecum ("the Subpoena") for the production of documents pursuant to Fed. R. Civ. P. 45. (*See* Doc. 14, Kinsey Decl. in Support of Motion to Compel, Ex. B Subpoena). The Subpoena contained sixty-seven (67) separate document requests. Save Mart objected to the Subpoena and refused to produce the documents. Wal-Mart moved to compel production of the documents. (Doc. 12, Pl.'s Motion to Compel).

In the Subpoena, Wal-Mart generally requested information and documents regarding communications between Save Mart and City staff, City Council members, and City officials, as well as communications between Save Mart and third parties, including other grocers and the United Food and Commercial Workers Union.[2] Wal-Mart specifically requested communications relating to: Wal-Mart; any Wal-Mart store in the City of Turlock; any Wal-Mart Supercenter in the city of Turlock; the Turlock "Big Box"

---

[2] The other grocers included Raley's, Inc.; Safeway, Inc.; and/or Richland Markets. Individual agents of each of these entities are also listed in the requests.

3

Ordinance; or any "Big Box" Ordinance.[3]  (*See* Doc. 14, J. Kinsey Decl. in Support of Mot. to Compel, Ex. B Subpeona).

Wal-Mart also requested information, documents, and communications relating to a purported "closed door" August 22, 2003, meeting attended by both Turlock City Council members and other City officials, including the mayor, and by representatives of Save Mart and other California grocers.[4]  During oral argument, Wal-Mart stated that at the meeting, the Turlock City Council members met with the grocers and the Union representatives individually for hour-long intervals.  Wal-Mart contends that the meeting caused the City to withdraw its support for a Wal-Mart Supercenter and thereafter enact the Ordinance, which completely prohibits Wal-Mart from building its planned Supercenter within the City.

The parties agree that the discovery requested in this case relates only to the commerce clause claim.  The commerce clause claim was the only claim addressed by the magistrate judge.  In its commerce clause claim, Wal-Mart alleges that the Ordinance

---

[3] "Big Box Ordinance" is defined as follows by the Subpoena: "any past, existing, or future ordinance, regulation, legislation, or rule of general applicability placing limitations or prohibitions on the size or merchandise mix of large-scale retailers including, without limitation, the January 13, 2004, ordinance enacted by the City of Turlock."  (Subpoena, Addendum A, 1).

[4] Representatives from the following entities were also, according to Wal-Mart, present at the meeting: Safeway, Inc.; Raley's Supermarkets; Richland markets; United Food and Commercial Workers Union, Local 588.  (Doc. 40, Pl.'s Opp. 3-4). City officials present included the Turlock City Mayor; the Director of Community Development for the City; Planning Manager for the City; and the City Manager.  (*Id.*).

**4**

has the effect of purposefully discriminating against out-of-state retailers, such as Wal-Mart, in favor of in-state retailers, such as Save Mart. (*Id.* at ¶ 46). Even though the parties did not consider Wal-Mart's other claims, the discovery requested here may be relevant to those claims as well. Wal-Mart's equal protection claim (under both the United States and California Constitutions) is that, under the Ordinance, other similarly-situated large-scale grocers are permitted to operate in the City, while Wal-Mart is not. (*Id.* at ¶¶ 28-40). Wal-Mart's civil rights claim appears to be a claim of deprivation of economic rights to develop its real property under the Civil Rights Act. (*Id.* at ¶¶ 53-6). Deprivation an identifiable, protectable economic interest by unconstitutional means under color of state law can give rise to a civil rights claim. *See* 42 U.S.C. § 1983.

On January 14, 2005, the magistrate judge heard oral argument regarding the motion to compel. (*See* Doc. 27, Minutes). On January 28, 2005, the magistrate judge granted in part Wal-Mart's Motion to Compel. (Doc. 30, Mag. Order 6). The magistrate judge ordered Save Mart to produce the following documents:

> [D]ocuments regarding or relating to communications or meetings, or intended or anticipated communications or meetings with the City [of Turlock] after August 22, 2002, by Save Mart or any other person or entity relating to the Big Box Ordinance, Wal-Mart or Wal Mart's Supercenter.

(Doc. 30, Mag. Order 6).

Save Mart refused to comply with the magistrate judge's January 28, 2005, Order, and moved for reconsideration. (Doc. 25, Save Mart's Mem., filed February 25, 2005). Wal-Mart

opposed.[5]  (Doc. 40, Pl.'s Opp. Mar. 7, 2005).  Save Mart

replied.  (Doc. 46, Save Mart's Reply, filed March 21, 2005).

Oral argument was heard on the objections April 18, 2005.

Natalie M. Weber, Esq., appeared on behalf of Save Mart.

Benjamin P. Fay, Esq., appeared on behalf of Defendants the

City of Turlock and Turlock City Council.  William C. Hahesy,

Esq., and Jon P. Kinsey, Esq., appeared on behalf of Wal-Mart.

The Subpoena was modified.  Counsel were ordered to submit a

proposed order that reflected the rulings modifying the subpoena.

On May 5, 2005, counsel for all parties jointly submitted a

proposed modified order.  (Doc. 62, Proposed Order Denying Save

Mart's Request for Reconsideration).  The parties also jointly

submitted a Proposed Second Amended Protective Order (Doc. 63,

Proposed Order).

### III.    <u>LEGAL STANDARD</u>

Pursuant to Local Rule 72-303(f), a district court applies

the following standard in reconsidering a magistrate court's

decision:

> The standard that the assigned Judge shall use in all
> such requests is the "clearly erroneous or contrary to
> law" standard set forth in 28 U.S.C. § 636(b)(1)(A).
> See Fed. R. Civ. P. 72(a).

Section 636(b)(1)(A) sets forth the standard of review as

follows:

> Notwithstanding any provision of law to the contrary

---

[5] Wal-Mart filed its original opposition on March 4, 2005.
(Doc. 37).  Wal-Mart filed an "Amended Opposition" on March 7,
2005.  (Doc. 40).

. . . a judge may designate a magistrate [judge] to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. ***A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.***

(emphasis added).[6]

Fed. R. Civ. P. 26(b)(1) is the applicable standard for discovery, and provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party...."

## IV.   LEGAL ANALYSIS

Save Mart argues that the magistrate judge's order was incorrectly decided for the following reasons: (1) the magistrate judge erred in holding that no privileges apply, including the First Amendment associational privilege, the privacy privilege, and the deliberative process privilege; (2) the magistrate judge erred in not balancing Save Mart's purported First Amendment and privacy interests against Wal-Mart's need for the requested information; (3) the magistrate judge's order is overbroad; and

---

[6] Fed. R. Civ. P. 72(a) also sets forth the standard for a district court's review of a magistrate judge's order: "The district judge to whom the case is assigned shall consider [a party's] objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." *Id.* (emphasis added).

(4) the magistrate judge erred in refusing to consider the merits of Wal-Mart's Commerce Clause claim.  Save Mart also argues that the magistrate judge's order fails to properly protect the documents Save Mart was ordered to produce.  Save Mart requests a protective order be entered and also requests *in camera* review for privileged and otherwise "protected" documents.  Save Mart makes no argument that there is newly discovered evidence or a change in the law.  Wal-Mart opposes Save Mart's motion, and also argues that Save Mart's motion was not timely filed.

### A.   Whether Save Mart's Motion for Reconsideration was Timely Filed.

Wal-Mart argues in its opposition that Save Mart's motion was not timely filed.  Save Mart maintains that its motion was timely filed.  The magistrate judge's order issued on January 28, 2005, and was served on counsel for Plaintiff and Defendant by the clerk of court via e-mail on the same day. Save Mart was not served electronically by the clerk.  Instead, counsel for Wal-Mart served Save Mart with the magistrate judge's order via facsimile and overnight courier on February 7, 2005. (Doc. 31, Notice of Service).  Save Mart filed and served its Motion for Reconsideration on February 25, 2005.

Fed. R. Civ. P. 72(a) requires a party to serve and file objections to a magistrate judge's order within 10 days of being served with the order:

> Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made.

**8**

*Id.*  Local Rule 72-303(a), likewise provides that "[r]ulings by Magistrate Judges shall be final if no reconsideration thereof is sought from the Court within ten (10) court days calculated from the date of service of the ruling on the parties, see Fed. R. Civ. P. 6(a), (e); Fed. R. Crim. P. 45(a),(d), unless a different time is prescribed by the Magistrate Judge or the Judge."[7]

Save Mart's motion for reconsideration was timely filed. Wal-Mart sent Save Mart the magistrate judge's order via facsimile and overnight courier on February 7, 2005.  Save Mart is correct in that service by facsimile and overnight courier is not technically proper service under Fed. R. Civ. P. 5.  Rule 5 allows service by means other than United States Mail, including electronic means, but only if the party to be served consented in writing to such service.  There is no evidence that Save Mart consented in writing to service by facsimile or overnight courier.

Assuming that Save Mart did so consent and was properly served with the order on February 7, 2005, Save Mart's filing of the motion for reconsideration was nevertheless timely.  When the prescribed period is less than eleven days, then Saturdays, Sundays, and legal holidays are excluded.  Fed. R. Civ. P. 6(a); *see also* Local Rule 6-136(b).  Legal holidays include federal holidays listed in Rule 6(a) and any holidays designated by the state in which the district court sits.  California recognized both February 11, 2005, and February 21, 2005, as state holidays.

---

[7] No different period of time was prescribed by the magistrate judge in his order or by the district judge.

9

*See* Cal. Gov. Code §§ 6700(d), (e).  February 21, 2005, was also recognized as a federal holiday (Washington's Birthday).  Also, Fed. R. Civ. P. 6(e) provides for 3 additional days to be added to the prescribed period when notice is served on the party by means other than in-person delivery.

Save Mart had thirteen court days from February 7, 2005, to file and serve its objections.  Thirteen days from February 7, 2005, excluding weekends and holidays, is February 26, 2005, a Saturday.  When the last day of a period falls on a weekend day, such as Saturday, it is not included and the period runs from until the end of the next day that is not a weekend day or legal holiday.  Fed. R. Civ. P. 6(e).  In this case, that date was Monday, February 28, 2005.  Because Save Mart filed its motion on Friday, February 25, 2005, its motion was timely filed. Save Mart's objections to the magistrate judge's order are not time-barred.

### B.   **Whether the Requested Documents are Protected by Privilege.**

Save Mart argues the requested documents are privileged because (1) they are related to protected associational activities under the First Amendment; (2) Save Mart has a protectable privacy right in the requested documents; and (3) the documents are protected by the deliberative process privilege.

As a preliminary matter, Save Mart offers no factual basis for its privilege arguments.  Save Mart fails to provide a description of the nature of the documents to be produced, as is required by Fed. R. Civ. P. 45(d)(2), and instead provides

conclusory, blanket assertions of privilege over broad categories

of documents, which is not allowed or acceptable under the

Federal Rules of Civil Procedure.  *Id.; see also Diamond State*

*Ins. Co. v. Rebel Oil Col, Inc.*, 157 F.R.D. 691, 697-8 (D. Nev.

1994) (citing *In re Grand Jury Investigation*, 974 F.2d 1068, 1070

(9th Cir. 1992)).


**1.   Whether the Requested Documents Are Protected by the First Amendment Expressive Association Privilege.**

The magistrate judge found that "the documents requested are

not related to 'protected associational activities' of Save Mart

thereby implicating the First Amendment."  (Doc. 30, Mag. Order

5-6).  Save Mart argues that the magistrate judge erred in this

finding because the documents relate to Save Mart's purported

associational activities that are protected by the First

Amendment.

The First Amendment does not explicitly provide for freedom

of association.  U.S. Const. amend. I ("Congress shall make no

law respecting an establishment of religion, or prohibiting the

free exercise thereof; or abridging the freedom of speech, or of

the press; or the right of the people peaceably to assemble, and

to petition the Government for a redress of grievances.").

However, a freedom to associate has long been recognized as an

implicit aspect of the freedom of speech protected by the First

Amendment.  *See I.D.K., Inc. v. Clark County*, 836 F.2d 1185, 1199

(9th Cir. 1988); *NAACP v. Alabama*, 357 U.S. 449, 462-3 (1958).

The right of association can, under some circumstances, protect

against the discovery of information or documents by the

11

government.  *Id.*; *see also Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 2-4 (D.D.C. 2002).  For example, the associational privilege can protect against discovery of membership lists of civil rights organizations or political parties.  *See id.*

The party from whom discovery is sought has the burden to establish an associational privilege exists.  *Id.*  That party must show that disclosure of the information sought would induce members to withdraw from the organization, or dissuade others from joining the organization, because they fear that exposure of association with the organization will lead to threats, harassment, or reprisal.  *Id.*  If the party claiming the privilege succeeds in meeting this burden, the burden then shifts to the government to show it has an interest in the information that outweighs the impingement on the associational right.

Save Mart's claim of associational privilege fails.  First, Save Mart cannot assert an infringement of a constitutional right against a private party such as Wal-Mart unless it can show that the private party's infringement somehow constitutes state action.  *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir. 1996).  None of the cases Save Mart cites hold that the associational privilege protects against discovery by a private party.  *Sweezy v. New Hampshire*, 354 U.S. 234 (1957); *Buckley v. Valeo*, 424 U.S. 1, 14 (1976); *White v. Lee*, 227 F.3d 1214, 1227 (9th Cir. 2000); *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984); *Healy v. James*, 408 U.S. 169, 181 (1972); *Britt v. Super. Ct.*, 20 Cal.3d 844 (1978).  Instead, those cases hold that individuals or entities are protected against compelled production of information to the government or a governmental

**12**

entity.

Second, Save Mart has not identified the beliefs, views, or associations it seeks to protect.  Save Mart makes only vague references to its "communications with third parties regarding this important political issue."  (Doc. 32, Save Mart's Mem. 5).  Save Mart is a business competitor of Wal-Mart seeking to prevent the entry of a "superstore" into the Turlock market based on perceived adverse business consequences arising from enhanced competition.  Conclusory assertions of unspecified expressive association are not protectable.  For a group to be protected by the First Amendment's expressive association right, it must engage in "expressive association," which constitutes "some form of expression, whether it be public or private."[8]  *Boy Scouts of*

---

[8] The United States Supreme Court has recognized two types of associational privileges:

> Our decisions have referred to constitutionally protected "freedom of association" in two distinct senses.  In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme.  In this respect, freedom of association receives protection as a fundamental element of personal liberty.  In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment -- speech, assembly, petition for the redress of grievances, and the exercise of religion.

*Roberts*, 468 U.S. at 617-8.  The privilege claimed here seems to be the latter, considering Save Mart's vague references to its "communications with third parties regarding this important political issue." (Doc. 32, Save Mart's Mem. 5).  Save Mart does not appear to be claiming a right to maintain "intimate human relationships."  Instead, Save Mart seems to claim a right to

13

1  *Amer. v. Dale*, 530 U.S. 640, 648 (2000); *see also Roberts*, 468

2  U.S. at 617-8; *City of Dallas v. Stanglin*, 490 U.S. 19, 25

3  (1989).  While expressive association is "not reserved for

4  advocacy groups," there must be "some form of expression" for the

5  associative right to exist.  *Dale*, 530 U.S. at 648.  Under a

6  charitable interpretation, Save Mart suggests its expressive

7  association is its opposition to the Turlock Wal-Mart

8  Supercenter, which is shared with various unidentified "third

9  parties," and expressed in a political forum before the City

10  Council of Turlock.  However, even if opposition to the Wal-Mart

11  Supercenter is "expression," Save Mart cites no law supporting

12  the expressive associational rights of corporations.

13      Third, even if Save Mart could establish that it, as a

14  corporation, engages in some kind of expressive association with

15  others, the notion that the substance of communications regarding

16  the activities, meetings, and communications of a governing

17  representative body would lead to threats, harassment, or

18  reprisal is beyond unreasonable.  Not only does Save Mart not

19  identify any persons or entities with whom it currently

20  associates, Save Mart also does not identify any persons or

21  entities who would be dissuaded from associating with it if the

22  information (whatever it may be) were disclosed.

23      Save Mart fails to explain how disclosure of its views would

24  dissuade others from associating with Save Mart for fear of

25  threats, harassment, or reprisal.  The only evidence Save Mart

26

27  _____

28  associate for the purpose of engaging in activities protected by
    the First Amendment.

offers regarding the "chilling effect" that would result from the production of such documents is a comment by a Wal-Mart developer (whom Wal-Mart contends was not authorized to speak on Wal-Mart's behalf) that was published in a newspaper.  Lee Jamieson is quoted in a Bakersfield newspaper as having purportedly stated, "When Mr. Herum's company [i.e., Save Mart] goes to do another project, payback is going to be a bitch." (*See* Doc. 40, Pl.'s Opp. 17 n. 19).  This statement does not establish the requisite "chilling" on Save Mart's purported associational activities.

Save Mart has cited and quoted from numerous First Amendment cases, and has propounded First Amendment rhetoric throughout its brief.  Save Mart's attempt to analogize itself to members of political parties, civil rights organizations, and professional associations fails.  Save Mart's arguments are based on a misperception of the purpose of the associational privilege -- to protect against infringement of First Amendment rights by the state.  Save Mart has not shown how its communications with or about the City regarding Wal-Mart or the Ordinance are protectable by an associational privilege.  The dispute here is a straightforward one between business competitors fighting over plaintiff's entry into a local market.

The magistrate judge's order are not clearly erroneous.  Save Mart's request for reconsideration of the magistrate judge's finding of no associational privilege is **DENIED**.

### 2. Whether Save Mart has a Protectable Privacy Interest in the Requested Documents.

The magistrate judge found that Save Mart "failed to

1  identify a privacy interest warranting protection from

2  disclosure." (Doc. 30, Mag. Order 5). Save Mart argues that the

3  magistrate judge erred in this finding, but has not offered

4  factual support for its blanket contention that "the case law

5  cited by Save Mart...demonstrates that the Magistrate Judge's

6  Order is clearly erroneous and contrary to law." (Doc. 32, Save

7  Mart's Mem. 6).

8       None of the cases Save Mart cites recognize a privacy

9  privilege that protects broad categories of a private

10 corporation's documents from production by another private party.

11 *United States v. Morton Salt Co.*, 338 U.S. 632 (1950); *United*

12 *States v. Hubbard*, 650 F.2d 293, 305-7 (D.C. Cir. 1981); *Local*

13 *174, Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen, &*

14 *Helpers of Amer. v. United States*, 240 F.2d 387, 391 (9th Cir.

15 1956); *Civil Aeronautics Bd. v. United Airlines, Inc.*, 542 F.2d

16 394, 399 (7th Cir. 1976). Wal-Mart is a private party. The

17 cases cited by Save Mart address the extent to which the Fourth

18 Amendment protects a corporation from the investigatory power of

19 the government. These cases have no application here.

20 Furthermore, Save Mart has not identified the privacy interest it

21 seeks to protect.

22      There is no basis upon which to overturn the magistrate

23 judge's order on privacy grounds. Save Mart's request for

24 reconsideration of the magistrate judge's finding of no privacy

25 privilege is **DENIED**.

26 //

27 //

28 //

16

### 3.   Whether the Requested Documents Are Protected by the Deliberative Process Privilege.

The magistrate judge found that "[t]he deliberative process privilege is...inapplicable in that this privilege only protects the decision making processes of government agencies and therefore must be invoked by the City. *Assembly of the State of Cal. v. United States Dept. of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992)." (Doc. 30, Mag. Order 6). Save Mart argues that the magistrate judge erred in this finding because the City has in fact invoked the deliberative process privilege.[9]

What Save Mart disingenuously omits from its analysis, however, is that the deliberative process privilege can only be invoked by the government or governmental entities. *United States v. Rozet*, 183 F.R.D. 662, 665 (N.D. Cal. 1998) (citing *United States v. Reynolds*, 345 U.S. 1, 7 (1953)). The privilege does not protect private corporations such as Save Mart. *See id*. A private business has no deliberative process privilege.

"The deliberative process privilege is based on the perceived need to encourage candor within the decision-making process by protecting predecisional communications from disclosure."[10]   *Id*. Furthermore, "[i]ts purpose is to allow

---

[9] Save Mart notes that the City filed a joinder to Save Mart's Opposition to Wal-Mart's Motion to Compel, wherein the City states "the City hereby asserts the deliberative process privilege as outlined and argued in Save Mart's opposition brief." (Doc. 32, Save Mart's Mem. 8).

[10] Other purposes of the deliberative process privilege include:

to insure that subordinates within an agency will feel free

1   agencies freely to explore possibilities, engage in internal

2   debates, or play devil's advocate without fear of public

3   scrutiny." *Assembly of the State of Cal.*, 968 F.2d at 920.

4   "This privilege permits the government to withhold documents that

5   reflect advisory opinions, recommendations and deliberations

6   comprising part of a process by which government decisions and

7   policies are formulated." *Id.*

8       The deliberative process privilege does not protect

9   communications between a government official and a private third

10  party.  Such communications are not, by definition, governmental

11  deliberations.  This means communications and information

12  exchanged among private parties and government representations

13  are not within the "deliberative process."

14      There is no basis upon which to question the magistrate

15  judge's order on deliberative process privilege grounds.

16  Save Mart's request for reconsideration of the magistrate judge's

17  finding of no deliberative process privilege is **DENIED**.

18  //

19  //

20  //

21  _____

22      to provide the decision maker with their uninhibited
        opinions and recommendations without fear of later being
23      subject to public ridicule or criticism; to protect against
        premature disclosure of proposed policies before they have
24      been finally formulated or adopted; and to protect against
        confusing the issues and misleading the public by
25      dissemination of documents suggesting reasons and rationales
        for a course of action which were not in fact the ultimate
26      reasons for the agency's action.

27  *Rozet*, 183 F.R.D. at 665 (quoting *Coastal States Gas Corp. v.

28  Dept. of Energy*, 617 F.2d 854 (D.C. Cir. 1980)).

**C.   Whether the Magistrate Judge Erred Not Weighing Save Mart's Purported First Amendment or Privacy Interests Against Wal-Mart's Need for Discovery.**

Save Mart argues that even if there is no associational activity or privacy privilege, the magistrate judge erred in not weighing Save Mart's "First Amendment and privacy interests" against Wal-Mart's need for the requested information. (Doc. 32, Save Mart's Mem. 9 ("Even if the requested information is not protected by a privilege per se, the existence of strong First Amendment and privacy interests warrant consideration.")). Save Mart's argument is without merit.

Save Mart cites three cases to support its argument.  Unlike the associational and privacy privilege cases discussed above, the issue in these cases involves discovery of information by private parties, rather than by the government.  Nevertheless, these cases are distinguishable and do not apply here.

The court in *Marrese v. Amer. Academy of Orthopeadic Surgeons*, 726 F.2d 1150 (7th Cir. 1984), rev'd on other grounds, 470 U.S. 373, held that the plaintiffs' discovery request was impermissibly overbroad where it requested all membership applications for a ten-year period from the defendant, a private surgeons' professional association.  The plaintiff surgeons, who made the request, were challenging their denial of membership in the defendant association.  The court held the applications were not protectable by a First Amendment privilege, but found a privacy interest in the applications, discovery of which the district judge should have approached in a more reserved manner,
//
//

**19**

1   including but not limited to the use of *in camera* review.[11]

2       Similarly, the court in *In re Sealed Case (Medical Records)*,

3   381 F.3d 1205, 1217-8 (D.C. Cir. 2004), found that all of an

4   individual's medical records were not absolutely protected by a

5   psychotherapist privilege.   Nevertheless, the medical records

6   were sufficiently private to be protected from unconditional

7   discovery.   In that case, the plaintiffs sought discovery of the

8   complete medical file of a non-party disabled group home

9   resident.   The court found that the district judge's discovery

10  order inappropriately ordered the production of the co-resident's

---

11

12

13  [11] Judge Posner wrote the majority opinion in *Marrese*:

14          [B]arring the plaintiffs or their counsel from all
            access to the membership files would probably make it
15          impossible for them to prove their antitrust case.   But
            there were various devices that the district judge
16          could have used to reconcile the parties' competing
            needs.   For example, he could have examined the
17          membership files himself *in camera*, a procedure
            described by the Supreme Court in a related context as
18          "a relatively costless and eminently worthwhile method
            to insure that the balance between petitioners' claims
19          of irrelevance and privilege and plaintiffs' asserted
            need for documents is correctly struck.
20

21  726 F.2d at 1160 (citation omitted).

22
        In reversing the Seventh Circuit's opinion, the Supreme
23  Court did not address the discovery issue.   *Marrese v. Amer.
    Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985) ("We
24  granted certiorari limited to the question whether the Court of
    Appeals correctly held that claim preclusion requires dismissal
25  of the federal antitrust action...."). The Supreme Court held
    that the federal full faith and credit statute required that the
26  federal court consider state law of claim preclusion in
    determining whether state court judgment dismissing the surgeons'
27  complaint barred subsequent federal antitrust claim which could
    not have been raised in the state proceeding.   *Id*. at 379-80.
28

20

entire medical file, "regardless of whether it was relevant to a claim or defense, regardless even of whether it was relevant to the subject matter of the case." *Id*. at 1216.  Save Mart fails to identify the documents sought, so it is impossible to determine whether they contain information that is as potentially sensitive as that contained in the medical file of a disabled group home resident.  The likelihood that corporate records of communications relating to the deliberations of a local government body are as sensitive as such medical records is extremely small.  *In re Sealed Case* does not support Save Mart's position.

Save Mart also cites an observation from Justice Powell's concurrence in *Herbert v. Lando*, 441 U.S. 153, 176-7 (1979): "The District Court must ensure that the values protected by the First Amendment, though entitled to no constitutional privilege in a case of this kind, are weighed carefully in striking a proper balance."  (Doc. 32, Save Mart's Mem. 9).  Save Mart takes the quote out of context.  The *Herbert* court held that a newspaper had no absolute First Amendment privilege in its editorial process.  At the outset of his concurrence, Justice Powell states: "I write to emphasize the additional point that, in supervising discovery in a ***libel suit by a public figure***, a district court has a duty to consider First Amendment interests as well as the private interests of the plaintiff."  *Id*. at 177-8 (emphasis added).  This case is not a libel suit against a newspaper by a public figure, and Save Mart has made no showing that the interests to be protected here resemble in any respect those in *Herbert*.

21

In short, Save Mart has not yet identified substantive information deserving of protection that is in any way analogous to the personal information contained in the surgeons' applications in *Marrese*; highly sensitive medical information contained in the file of the mentally disabled third-party in the *In re Sealed Case*; or the editorial processes of the newspaper in *Herbert*.   There is no basis to conduct an *in camera* review based on privacy interests because Save Mart has not described the nature of the information or submitted any documents for review. The magistrate judge's order does not fail to balance First Amendment or privacy interests against Wal-Mart's need for production, as no such interests were presented.

Save Mart's request for reconsideration of the magistrate judge's order on the basis of failure to balance interests is **DENIED**.   If Save Mart has documents it claims are privileges the court will conduct an *in camera* review.

### D.   <u>**Whether the Magistrate Judge's Order is Overbroad.**</u>

The magistrate judge's order states:

> Save Mart is ORDERED to produce documents regarding or relating to communications or meetings, or intended or anticipated communications or meetings with the City after August 22, 2002, by Save Mart or any other person or entity relating to the Big Box Ordinance, Wal Mart or Wal Mart's Supercenter.

(Doc. 30, Mag. Order 6).  While this language is not altogether clear, it can reasonably be interpreted to require production of documents regarding or relating to actual or intended communications or meetings with the City about the Ordinance, Wal-Mart, the proposed Wal-Mart Supercenter, where the

**22**

1   communications or meetings took place between Save Mart and the

2   City or between Save Mart and a third party.

3       The standard for discoverable information under the Federal

4   Rules of Civil Procedure is low.  Parties may obtain discovery

5   information that may reasonably lead to the discovery of

6   admissible evidence.  Fed. R. Civ. P. 26(b)(1) ("Relevant

7   information need not be admissible at the trial if the discovery

8   appears reasonably calculated to lead to the discovery of

9   admissible evidence.").

10      The parties contend that the information requested relates

11  to Wal-Mart's commerce clause claim, and specifically to Wal-

12  Mart's claim that the Ordinance is discriminatory in effect or

13  purpose.  All public input to the City of Turlock relating to the

14  Ordinance's effect or purpose is relevant and discoverable.  Wal-

15  Mart is entitled to know what was communicated to the City

16  relating to the proposed Wal-Mart Supercenter and the Turlock

17  "big box" ordinance.  This information includes any documents

18  that may reflect what was or was intended to be communicated to

19  the City, including but not limited to communications with third

20  parties.  All such input could shed light on the overall basis

21  upon which the legislative judgement was made.  The public is

22  entitled to know all information that went into the legislative

23  decision.

24      During oral argument on April 18, 2005, the Court reviewed

25  each of the sixty-seven document requests from the original

26  subpoena.  The scope of information requested in the subpoena was

27  determined to be overbroad, and the language was narrowed.  (*See*

28  Doc. 62, Proposed Order).  The magistrate judge also found the

information contained in the requests to be overbroad, and modified the requests accordingly in the Order Granting in Part Plaintiff's Motion to Compel Compliance with the Subpoena Duces Tecum (Doc. 30).  While unclear, the magistrate judge's order is not clearly erroneous.  The magistrate judge's order will not be overturned on these grounds.

Save Mart also argues that the magistrate judge's order is overbroad in that it "requires production of communications with the City rather than restricting production to communications with members of the City Council, who constitute the decision makers in this case."  (Doc. 32, Save Mart's Mem. 11).  Communications with city officials other than City Council members could reasonably lead to the discovery of relevant, admissible information.  *See* Fed. R. Civ. P. 26(b)(1).  The magistrate judge's order is not overbroad insofar as it requests communications between Save Mart city officials other than City Council members.

Save Mart also contends that the discovery requests are cumulative in that the state administrative record relating to the Petition for Writ of Mandate proceedings in Stanislaus County Superior Court has already been produced to Wal-Mart.  However, it is not clear that Save Mart produced all relevant documents during the state court proceedings.  (*See* Doc. 40, Pl.'s Opp. 23-4).  Wal-Mart's requests are not cumulative on these grounds.

Save Mart also argues that the order is overbroad to the extent that it requires the production of documents relating to the time period after the ordinance was passed.  This argument also fails.  The requested documents and information that date

**24**

from the time period after the Ordinance was passed reasonably relate to, among other things, the purpose of the Ordinance, the City's alleged discriminatory intent, or other communications between Save Mart and the City that bear on further efforts to burden interstate competition and other issues relevant to the commerce clause claim.

Finally, Save Mart objects to the time period in the magistrate judge's order which goes back to August 22, 2002. Wal-Mart stated during oral argument that it did not acquire the property in Turlock for the proposed Supercenter until "late 2002/early 2003." Wal-Mart began to conduct due diligence and search for properties in late 2002. Wal-Mart acknowledged that its plans to build a Supercenter in Turlock were not widely-known until the property was acquired. The parties agreed during oral argument to limit the relevant time period for the production to January 1, 2003.

There is no basis upon which to overturn the magistrate judge's order on the grounds that it is overbroad. Save Mart's request for reconsideration of the magistrate judge's order on the grounds that it is overbroad is **DENIED**. The magistrate judge's order is modified as to time period. The Subpoena is modified as stated in Doc. 62 (Proposed Order).

### E.   The Merits of Wal-Mart's Commerce Clause Claim.

Save Mart contends that the magistrate judge erred in not considering the merits of Wal-Mart's commerce clause claim. Save Mart is incorrect. The magistrate judge's discovery order states:

Although Save Mart argues the Ordinance does nothing more than prohibit a particular mode of operation and therefore does not implicate the Commerce Clause, Wal-Mart's claim is contrary.  The Court will not resolve this issue, which goes to the merits of Wal-Mart's claim, in a discovery motion.  Specifically, Wal Mart claims that the Ordinance prohibits it, an out of state company, from opening "Discount Superstores" in the City.  Wal Mart further claims that the Ordinance does not impose any prohibitions whatsoever on any California-based retailers, including the local retailers such as Save Mart.

(Doc. 30, Mag. Order 4).  The magistrate judge also cited commerce clause law in the order:

The Commerce Clause prohibits economic protectionism, regulatory measures designed to benefit in-state economic interest by burdening out of state competitors.  *Wyoming v. Oklahoma*, 502 U.S. 437, 454 (1992).  A finding that state legislation constitutes economic protectionism may be made on the basis of either discriminatory purpose or discriminatory effect.  *Baccus Imps. v. Dias*, 468 U.S. 263, 270 (1984).

(*Id.* at 4 n.6).

Save Mart argues that Wal-Mart is not an "out-of-state" producer as a matter of law.  Save Mart also argues that Wal-Mart bases its status as an "out-of-state" business solely on the fact that it is incorporated in Delaware and its headquarters is in Arkansas.  Save Mart cites *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 127-8 (1978), which held that Exxon was not an "in-state" business for purposes of the commerce clause, even though it was incorporated in Maryland.  The Supreme Court looked to Exxon's business operations within the state (instead of its state of incorporation), and reasoned that Exxon was not "in-state" because it did not operate any retail stores in Maryland.

Wal-Mart responds that it is an out-of-state producer for the purpose of the Commerce Clause because no California retailer currently operates or plans to operate a "Discount Superstore" of

1  the size and scope of those operated by Wal-Mart.  (Doc. 40,
2  Pl.'s Opp. 27).  Wal-Mart cites *Atlantic Prince, Ltd. v. Jorling*,
3  710 F. Supp. 893 (E.D.N.Y. 1989) in support.  That court held
4  that a New York statute prohibiting the use of boats longer than
5  ninety feet from fishing in New York waters violated the Commerce
6  Clause because it was enacted to protect New York commercial
7  fishermen from out-of-state competitors.  *Id*. at 894-5.  The
8  court reasoned that the statute discriminated against New Jersey
9  based fishermen, despite that the out-of-state fishermen could
10 avoid the effect of the statute by using boats 90-feet long or
11 less.

12     It is not correct to decide, on a discovery motion, whether
13 Wal-Mart is in fact an "out-of-state" producer.  Save Mart has
14 failed to show that Wal-Mart's claim is meritless or frivolous.
15 Wal-Mart has at least a colorable claim that it is an out-of-
16 state business.

17     Likewise, Save Mart's contention that the Ordinance in no
18 way implicates the Commerce Clause is mistaken.  As the
19 magistrate judge noted, state legislation may constitute economic
20 protectionism on the basis of discriminatory purpose or effect.
21 *See Baccus Imps.*, 468 U.S. at 270.  Save Mart has not shown that
22 Wal-Mart's claim that the Ordinance is discriminatory in effect
23 is frivolous or meritless.

24     There is no basis upon which to overturn the magistrate
25 judge's order on the grounds that he failed to consider the
26 merits of Wal-Mart's commerce clause claim.  Save Mart's request
27 for reconsideration on that ground is **DENIED**.
28 //

**F.    Whether Save Mart Is Entitled to a Protective Order and/or *in camera* Review Relating to the Requested Documents.**

Save Mart argues that the magistrate judge's order fails to adequately protect the requested documents.  Save Mart requests that if produced, a protective order be entered requiring that the documents first be reviewed by the district court *in camera*, and that they be labeled "Highly Confidential - Attorney's Eyes Only."  Save Mart identifies its purported "privacy interests" as a justification, and claims that it "identified specific facts supporting its First Amendment privilege and privacy concerns," without identifying any such "specific facts" in its motion, either in this section or the sections discussing Save Mart's purported privileges.  Instead, Save Mart cites page 9 of its opposition brief to Wal-Mart's Motion to Compel.  Page 9 of Save Mart's opposition contains only one sentence that is even remotely related to a specific reason: "complying with the Subpoena is incredibly unduly burdensome because the Subpoena seeks documents that are not limited to the City of Turlock, but which extend to any 'Wal-Mart' located anywhere in the country, and 'any Big Box Ordinance' not limited to the City of Turlock."  The magistrate judge limited Wal-Mart's discovery requests accordingly in his order.

The Court **GRANTS** Save Mart's request for *in camera* review for specific documents and as to which Save Mart can specifically identify a privileges.  (*See* Doc. 63, Proposed Protective Order).  Save Mart's request that its documents be produced subject to protective order was agreed to at the hearing and is **GRANTED**.

On May 4, 2005, Save Mart submitted to the Court documents

labeled "Save Mart In Camera 00001-00030."  Save Mart claimed the documents are protected by the attorney-client privilege and the work product privilege.  The Court has reviewed the documents. All but one of the documents ("Save Mart In Camera 00001") are not privileged.  The document labeled "Save Mart In Camera 00001" is protected by the attorney work product and attorney-client privilege and will be retained by the Court under seal.  Save Mart's request to redact the name(s) of its counsel from the remaining documents is **GRANTED.**

## V.    CONCLUSION

For all the foregoing reasons, Save Mart's request for reconsideration of the magistrate judge's January 28, 2005 order (Doc. 30) is **DENIED.**  The magistrate judge's order is modified as to time period as stated herein.  The Subpoena is modified as stated in Doc. 62 (Proposed Order).

Save Mart's request for a protective order is **GRANTED.**

Save Mart's request for *in camera* review for privileged documents is **GRANTED.**

**SO ORDERED.**

**DATED: June 1, 2005.**

**/s/ OLIVER W. WANGER**

_____
            **Oliver W. Wanger**
    **UNITED STATES DISTRICT JUDGE**

29